**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: ) | |
| ROBERT JOSEPH BOWERS, ) | Case No. 17-15526-CDP |
| SSN: XXX-XX-5265 ) | |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |

***EX PARTE* MOTION FOR ORDER AUTHORIZING EXAMINATIONS PURSUANT TO FED. R. BANKR. P. 2004**

Daniel A. Hepner, Chapter 7 Trustee ("Trustee"), through his undersigned counsel, hereby requests that the Court enter an Order pursuant to Fed. R. Bankr. P. 2004, a form of which is submitted herewith, authorizing Trustee to conduct discovery and examinations as described below, and in support, states as follows:

**PROCEDURAL BACKGROUND**

1. On June 14, 2017 (the "Petition Date"), Robert Joseph Bowers ("Debtor") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Petition").

2. Daniel A. Hepner is the duly appointed Chapter 7 Trustee of Debtor's bankruptcy case.

3. The meeting of creditors pursuant to 11 U.S.C. § 341 was conducted by Trustee on August 4, 2017, and concluded on that day.

4. Debtor did not list any bank accounts on Schedule A/B. On Schedule I, Debtor indicated Debtor is not employed and Debtor's regular monthly income is $940.00. Debtor's Schedule I provides, "Petitioner has gotten by the past two years by doing side jobs and getting help from family." On Schedule J, Debtor listed monthly expenses in the amount of $2,715.00.

5. On his Statement of Financial Affairs ("SOFA"), Debtor indicated that he has not had any income from employment or from operating a business during 2017 or the previous two calendar years. In response to SOFA question 5, Debtor listed his income for January to June 2017 as "rent" in the amount of $1,150 and "sale of items" in the amount of $1,000.00. For the 2016 calendar year, Debtor listed income from "side jobs" in the amount of $14,000.00 and "sale of items" in the amount of $9,600.00. For the 2015 calendar year, Debtor listed income from "side jobs" in the amount of $12,000.00 and "sale of items" in the amount of $11,500.00.

## PREVIOUS ORDERS AUTHORIZING 2004 EXAMINATIONS

6. Subsequent to the meeting of creditors, Trustee obtained thousands of pages of documents from BDG International, Inc. ("BDG") which BDG obtained during its lengthy prepetition litigation with Debtor and pursuant to Fed. R. Bankr. P. Rule 2004.

7. On October 23, 2017, Trustee filed his Ex Parte Motion for Order Authorizing Examinations pursuant to Fed. R. Bankr. P. 2004 (the "Trustee's 2004 Motion") [Docket No. 35]. Pursuant to Trustee's 2004 Motion, Trustee sought authority to obtain discovery from Debtor, his alleged ex-spouse, Judith Bowers ("Ms. Bowers"), Debtor's three (3) children and seven (7) entities formed, managed or connected with Debtor and Ms. Bowers. On November 7, 2017, the Court granted Trustee's 2004 Motion [Docket No. 41].

8. On November 22, 2017, Trustee's counsel deposed Debtor. The deposition was continued since Debtor failed to produce documents responsive to the subpoena issued and served on Debtor by BDG. Prior to the deposition, Debtor's counsel had agreed, on behalf of Debtor, to produce documents in response to the BDG subpoena in order to avoid duplication by Trustee.

9. On December 19, 2017, Trustee sent a subpoena pursuant to Fed. R. Bankr. P. 2004 to Debtor through Debtor's counsel. A copy of Trustee's Subpoena is attached as **Exhibit A.**

10. On November 16, 2017, Debtor produced seven (7) documents in response to Trustee's Subpoena. On November 21, 2017, Debtor produced three (3) additional documents in response to the Trustee's subpoena.

11. On February 14, 2018, after repeated requests from Trustee's counsel and further continued depositions, Debtor provided written responses to Trustee's subpoena requests for production of documents. A copy of Debtor's responses is attached as **Exhibit B.**

## THE FLORISSANT PROPERTY AND THE ALLEGED DIVORCE

12. On or around May 15, 2006, Debtor and Ms. Bowers jointly acquired the real property located at 1439 County Road 111, Florissant, Colorado (the "Florissant Property"), via Warranty Deed recorded with the Clerk & Recorder of Teller County, Colorado. The Florissant Property is comprised of two parcels consisting of approximately 73 acres, and includes a pool, sauna, and barn. On information and belief, the value of this property is over $1 million.

13. On Schedule D, Debtor listed a debt owed to Park State Bank & Trust in the amount of $578,619.00 secured by the Florissant Property.

14. On or about March 1, 2013, Debtor and Ms. Bowers allegedly executed a document titled Employment and Transfer Agreement (the "Transfer Agreement"). A copy of the Transfer Agreement is attached as **Exhibit C**.

15. Pursuant to the Transfer Agreement, Debtor allegedly agreed to transfer his interest in the Florissant Property to Ms. Bowers. The Transfer Agreement provides "Judith agrees to pay Robert the sum of $200,000 for his interests in the home located at 1439 CR 111 Florissant, Colorado. All land and improvements will become the sole property of Judith E. Bowers upon execution of this document."

16. Under the Transfer Agreement, the purported consideration for the 2013 transfer of Debtor's interest in the Florissant Property was $200,000 that was to be paid by Ms. Bowers directly to American Express for Debtor's "monthly sales expenses." Specifically, the Transfer Agreement provides:

> Judith will pay monthly sales expenses, fully documented, on Robert Bowers' AmEx (sic) bill, direct to AmEx, for expenses generated solely for sales to benefit Hall Contracting or JEB Holdings. Any disputed amount will be determined by Judith. If or when the total monthly payments exceed $200,000.00, any additional expense payments are understood to be advances on a future commission . . . .

**Exhibit C**, at ¶ 4.

17. On or about March 10, 2013, Debtor executed a Quitclaim Deed and thereby transferred record title to the Florissant Property to Ms. Bowers. The Quitclaim Deed was recorded with the Teller County clerk and recorder on March 18, 2013. A copy of the Quitclaim Deed is attached as **Exhibit D.**

18. On January 11, 2017, Ms. Bowers filed a Petition for Dissolution of Marriage with the Teller County District Court, Case No. 2017DR30001.

19. On May 24, 2017, Debtor and Ms. Bowers' alleged divorce was finalized pursuant to a Decree of Dissolution of Marriage entered by the Teller County District Court.

20. The only document produced by Debtor regarding the alleged divorce is an unsigned and undated document titled "Separation Agreement." A copy of the Separation Agreement is attached as **Exhibit E**.

21. Under the Separation Agreement, Debtor and Ms. Bowers allegedly stipulated to the division of their assets and debts. The assets allegedly awarded to Ms. Bowers include the Florissant Property and a 100% ownership interest in three entities: JEB Holdings, LLC, RSB Holdings, LLC, and Hall Contracting Services, Inc. ("HCS"). The assets allegedly awarded to Debtor include the fully encumbered real property located at 1501 Stover Street, Fort Collins, Colorado (the "Stover Property"), a 2008 Dodge pickup, and a 100% ownership interest in an entity that was dissolved in 2015, Auxiliary Graphic Equipment, Inc.

22. As to debts, the Separation Agreement specifically provides:

3

> The parties agree that the husband, Robert Joseph Bowers, shall pay, as part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge these items:
>
> . . .
>
> H-4. All debts, charges, liabilities, and other obligations incurred solely by [Debtor] from and after January 11, 2017, unless express provision is made in this decree to the contrary.

*Separation Agreement*, at p. 5.

### VERIZON

23. During his deposition, Debtor testified that Ms. Bowers pays for a number of Debtor's monthly obligations, including the costs of his mobile cell phone.

24. During his deposition, Debtor testified that he uses his mobile cell phone to communicate with customers by text and email. **Exhibit F**, at 156:4-10 (transcript of November 21, 2017 deposition of Debtor). Debtor also testified that his only email address is: auxillarygraphic@ATT.net. **Exhibit F**, at 154:19-155:23.

25. Debtor further testified that he has a monthly plan for his mobile cell phone through Verizon Wireless ("Verizon") and that his monthly bill is part of a "family group" plan that is paid by Ms. Bowers. **Exhibit F**, at 156:11-157:2. Debtor testified that the monthly cost for his mobile cell phone is "maybe $125 bucks" and that Debtor pays $125 in cash to Ms. Bowers every month. **Exhibit F,** at 157:3-16.

26. Debtor initially testified that he was awarded a computer in his alleged divorce from Ms. Bowers. **Exhibit F**, at 104:23-107:5. Later, however, Debtor testified that he does not have a computer and that Debtor uses "his cell phone" and library computers for emails. **Exhibit F,** at 154:10-18; 160:2-4.

27. Based on Debtor's deposition testimony, Trustee intends to request documents from Verizon.

### AMERICAN EXPRESS

28. On his Schedule E, Debtor listed a debt owed to American Express in the amount of $25,000.00.

29. Although requested by Trustee, Debtor has not produced any documents regarding the monthly sales expenses allegedly paid by Ms. Bowers to American Express pursuant to the Transfer Agreement.

30. During his deposition, Debtor testified that the "AmEx bill" referred to in the Transfer Agreement is for a joint credit card in the name of Debtor and HCS. **Exhibit F**, at

145:10-146:6. During his deposition, Debtor further testified that Ms. Bowers paid American Express and the accounting for the $200,000.00 consideration to be paid by Ms. Bowers under the Transfer Agreement can be "tracked" from the American Express bills. **Exhibit F,** at 146:9-149:15.

31. Based on the Transfer Agreement and Debtor's testimony, Trustee intends to request documents from American Express.

### HALL CONTRACTING SERVICES, INC.

32. Debtor testified that he has worked in the printing press industry for over 40 years and that he continues to work in the industry on a commissioned basis as a salesperson for entities that are allegedly owned by Ms. Bowers. One such entity is HCS.

33. HCS is an Ohio corporation formed on December 14, 2005.

34. At his deposition, Debtor testified that he purchased an ownership interest in HCS in 2005 and, in 2012, Debtor sold his interest in HCS to Graham Hall and/or Bob McKenzie, both shareholders of HCS, for $150,000. **Exhibit F**, at 226:2-232:7.

35. In September 2012, after Debtor allegedly sold his interest in HCS, Graham Hall and Bob MacKenzie allegedly transferred their interests in HCS to Ms. Bowers pursuant to a Share Purchase Agreement and Ms. Bowers thereby became the majority shareholder of HCS. **Exhibit G** (Share Purchase Agreement).

36. In October 2012, Richard Palmer, a former shareholder of HCS, filed suit against Debtor, Ms. Bowers, HCS and others in the Court of Common Pleas, Lorain County, Ohio, Case No. 12CV178356 (the "Shareholder Lawsuit"). In his complaint, Palmer alleged that Debtor, along with certain other shareholders of HCS, devised a plan whereby Debtor would take control of HCS, use HCS's assets to pay the other shareholders for their interest in HCS, and then liquidate HCS. **Exhibit H** (Verified Complaint).

37. During his deposition, Trustee's counsel questioned Debtor regarding his 2012 tax return and as to reported income in the amount of $59,397.00 from the sale of tools. Debtor testified "when Judy acquired Hall, there was an excess of tooling in Ohio. And the first thing *we* had was an equipment sale." **Exhibit F**, at 235:17-25 (emphasis added).

38. In November 2012, Cincinnati Industrial Auctioneers conducted an auction of certain equipment owned by HCS. **Exhibit I** (ad for auction).

39. Further, Debtor testified that he was involved in the formation of an entity, Skyline Graphic Services LLC ("Skyline"), on March 31, 2008. **Exhibit F**, at 270:19-271:14. Skyline was formed to conduct business in the newspaper printing press industry. **Exhibit F**, at 270:16-271:19. In July 2012, Skyline was dissolved when Ms. Bowers filed a Statement of Dissolution with the Colorado Secretary of State. **Exhibit F**, at 272:9-18; **Exhibit J** (Statement of Dissolution). When asked why Skyline was dissolved, Debtor testified as follows:

> Because if I had Skyline Graphic Services, and it would be termed a competitor to Hall Contracting, then you couldn't make the acquisition because of the Shareholders Agreement. And Skyline was a direct competitor of Hall Contracting.

**Exhibit F**, at 272:19-25. In other words, Skyline was dissolved to avoid conflict with a Shareholders Agreement between the shareholders of HCS. **Exhibit F**, at 272:19-25. However, Debtor was not a party to the Shareholders Agreement. **Exhibit K** (Majority Shareholders Agreement dated February 15, 2007).

40. In 2012, Debtor received a K-1 from Skyline that indicates Debtor owned a 75% ownership interest in Skyline in 2012. **Exhibit F**, at 290:1-5. When asked whether Debtor was actively doing business under Skyline in 2012, Debtor stated:

> . . . In July [Skyline] was disbanded . . . . So up until that point I would say probably yes. *Then a decision was made to close it and proceed with Hall Contracting . . . to acquire Hall*.

**Exhibit F**, at 294:18-295:2 (emphasis added).

41. Based on Debtor's testimony regarding HCS, Trustee intends to request documents from Richard Palmer, Graham Hall, Bob MacKenzie, and Cincinnati Industrial Auctioneers.

## REQUESTED RELIEF

42. To investigate the assets and financial transactions of Debtor, Trustee seeks authority pursuant to Fed. R. Bankr. P. 2004 to obtain documents and, if Trustee determines necessary, testimony from the following:

    a. Verizon Wireless
    b. American Express
    c. Cincinnati Industrial Auctioneers
    d. Richard Palmer
    e. Graham Hall
    f. Bob MacKenzie

43. Under Fed. R. Bankr. P. 2004(b), the Court may order the examination of any entity regarding the acts, conduct, or property, or to the liabilities and financial condition of Debtor or to any matter which may affect the administration of the estate. Trustee desires to obtain discovery from the persons and entities identified above related to the matters described herein and any other matters affecting the administration of Debtor's bankruptcy estate. The discovery may include but not be limited to the taking of depositions and requesting the production of documents. Such discovery is necessary to enable Trustee to properly administer Debtor's estate.

**WHEREFORE**, Trustee requests that this Court enter an Order authorizing him to obtain discovery from and conduct examinations of the entities and individuals described above, and for such other and further relief as the Court deems just and proper.

Dated: February 20, 2018	Respectfully submitted,

**ONSAGER | FLETCHER | JOHNSON, LLC**

*s/ J. Brian Fletcher*
J. Brian Fletcher, #28629
Gabrielle G. Palmer, #48948
1801 Broadway, Suite 900
Denver, Colorado 80202
Ph: (303) 512-1123
Fax: (303) 512-1129
jbfletcher@OFJlaw.com
gpalmer@OFJlaw.com

*Counsel for Daniel A. Hepner as Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 20, 2018, I served a complete copy of this EX PARTE MOTION FOR ORDER AUTHORIZING EXAMINATIONS PURSUANT TO FED. R. BANKR. P. 2004 on the following parties (and any and all parties who have requested electronic notice through the court's CM/ECF system) in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

    Attorney Sean Cloyes; via CM/ECF
    Attorney David W. Drake; via CM/ECF
    Attorney Harvey L. Kramer; via CM/ECF
    Attorney Matthew J. Ochs; via CM/ECF
    Attorney Daniel J. Vedra; via CM/ECF
    Attorney U.S. Trustee; via CM/ECF

                                              *s/ Misty L. Schlabaugh*
                                              Misty L. Schlabaugh